**Enrique SEGNI, Plaintiff,**

v.

**COMMERCIAL OFFICE OF SPAIN, Defendant.**

No. 85 C 7721.

United States District Court, N.D. Illinois, E.D.

March 12, 1986.

Richard J. Witry, McCarthy, Duffy, Neidhart & Snakard, Chicago, Ill., for plaintiff.

Gerald L. Maatman, Jr., Marcel Molins, Baker & McKenzie and Franklin P. Auwarter, George A. Martinez, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

BRIAN BARNETT DUFF, District Judge.

This action arises out of an employment contract entered into by plaintiff Enrique Segni and Mercedes Rubio, acting in her official capacity as Commercial Attache of Spain on behalf of defendant Commercial Office of Spain ("Commercial Office"). This case is before the court on Rubio's motion to quash service.

The sole issue is whether the Commercial Office is "a state or political subdivision of a foreign state" for purposes of service under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a), or whether it is "an agency or instrumentality of a foreign state" for purposes of service under the Act, 28 U.S.C. § 1608(b).

Service on "a state or political subdivision of a foreign state" requires a plaintiff (in the absence of a special arrangement between the parties or compliance with an international business convention governing service) to send a copy of the summons and complaint, together with a translation of each into the official language of the foreign state, to the foreign state's ministry of foreign affairs. 28 U.S.C. § 1608(a)(1)–(3). If service by that method cannot be made within 30 days, the plaintiff may have the clerk of the court send a copy of the summons and complaint, together with a translation of each, to the United States Secretary of State for service through diplomatic channels. Service on "an agency or instrumentality of a foreign state," by contrast, may be made simply by delivering a copy of the summons and complaint to an officer, managing agent, or other agent authorized by law to receive service of process. 28 U.S.C. § 1608(b)(2).

Plaintiff served the complaint in this case by personally leaving a copy of the complaint and summons with Rubio. It is undisputed that if § 1608(a) governs service of the Commercial Office, service of the complaint in this case was improper and the motion to quash must be granted. It is similarly undisputed that if 28 U.S.C. § 1608(b) governs service of the Commercial Office, service was proper and the motion must be denied.

The language of the FSIA does not clearly distinguish between "a state or political subdivision of a foreign state" and "an agency or instrumentality of a foreign state." The FSIA defines only the latter phrase, and that definition encompasses "any entity ... (2) which is an organ of a foreign state or political subdivision thereof...." 28 U.S.C. § 1603(b). This definition is not particularly lucid, because it suggests that every "political subdivision" of a foreign state is also an "agency or instrumentality" of that state—which would be inconsistent with the language of § 1608(a), which expressly imposes more stringent service requirements in cases brought against "political subdivisions" of foreign states than in cases brought against the "agencies or instrumentalities" of those states.

■ The legislative history of the FSIA makes the difference between "state or political subdivision" and "agency or instrumentality" clear, however. The distinction is between an entity that is an integral part of a foreign state's political

structure, and an entity whose structure and function is predominantly commercial.

> As a general matter, entities which meet the definition of an "agency or instrumentality of a foreign state" should assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name.

H.R.Rep. No. 94–1487, 94th Cong., 1st Sess. 15–16, *reprinted in* 1976 U.S. Code Cong. & Ad. News 6604, 6614.

 By this standard, the evidence before the court clearly establishes that the Commercial Office is part and parcel of the Government of Spain, and thus that the Commercial Office is "a foreign state or political subdivision of a foreign state" for purposes of service under the FSIA. First, the Ambassador of Spain to the United States has certified to the court "[t]hat the Commercial Office of Spain in Chicago forms part of this Embassy, in whose organization it is integrated." The Ambassador's characterization of the Commercial Office deserves considerable deference. *See O'Connell Machinery Company, Inc. v. M.V. "Americana",* 566 F.Supp. 1381, 1384–85 (S.D.N.Y.1983), *aff'd,* 734 F.2d 115 (2d Cir.1984), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701.

Second, Rubio, who entered into the disputed contract on behalf of the Commercial Office in her official capacity as Commercial Attache, is recognized as a member of the Spanish diplomatic corps by the United States Department of State, the State of Illinois, and the City of Chicago. Third, the lease for the office space occupied by the Commercial Office was executed between Arthur Rubloff & Co. and the "Government of Spain for the Commercial Office of the Embassy of Spain." Finally, the employment contract out of which this action arises called upon plaintiff to promote American sales of Spanish wines—a func-

tion consistent with the Commercial Office's governmental status.

The motion to quash is accordingly granted.