Enrique SEGNI, Plaintiff,

v.

**COMMERCIAL OFFICE OF SPAIN, Defendant.**

No. 85 C 7721.

United States District Court, N.D. Illinois, E.D.

Dec. 24, 1986.

Richard J. Witry, McCarthy, Duffy, Neidhart & Snakard, Chicago, Ill., for plaintiff.

Franklin P. Auwarter, George A. Martinez, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BRIAN BARNETT DUFF, District Judge.

This action arises out of an employment contract entered into by plaintiff Enrique Segni and Mercedes Rubio, Commercial Attache of Spain, for defendant Commercial Office of Spain ("Commercial Office"). Defendant Commercial Office has moved to dismiss for lack of subject matter jurisdiction.

The Commercial Office argues that it is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.* The general rule under the FSIA is that "a foreign state shall be immune from the jurisdiction of the courts of the United States...." 28 U.S.C. § 1604. The foreign state is not immune, however, when "the action is based upon a commercial activity carried on in the United States by the foreign state...." 28 U.S.C. § 1605(a)(2).

It is undisputed that the Commercial Office is a "foreign state" for the purposes of the FSIA. *See Segni v. Commercial Office of Spain,* 650 F.Supp. 1040, 1041–42 (N.D.Ill.1986). Thus the sole issue before the court is whether the instant case is based on a commercial activity carried on in the United States by the Commercial Office.

■ The Commercial Office argues that because this court previously held that its functions, in general, were "governmental," *see id.* at 1042, it necessarily follows that its actions relevant to the instant case

were also "governmental." This argument, however, overlooks the relevant law guiding this court's decision. Section 1603(d) of the FSIA requires a court to determine whether or not an activity is commercial by referring to the "nature" of the act rather than to its "purpose." Thus, even assuming we held that the functions of the Commercial Office are governmental, that does not preclude us from finding that the Commercial Office's acts relative to the instant suit were commercial. *See* 28 U.S.C. § 1603(d). *See also, Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1108 (5th Cir.1985) (courts must define, with precision, the activity on which the plaintiff's suit is based); *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981) (a court's first task is to identify what particular conduct in the case is relevant).[1]

■ The nature of the act of the Commercial Office in this case was contractual. Mr. Segni was employed by the Commercial Office to develop the marketing of Spanish wines in the midwestern United States. Mr. Segni was terminated during the term of his contract and brought suit to recover damages. There is no indication in the pleadings that Mr. Segni's termination had anything to do with a Spanish Government policy, or was in any way governmental. *See Callejo*, 764 F.2d at 1108–10.

For the same reason, two of the cases relied on by the Commercial Office are inapposite. In both *Gittler v. German Information Center*, 95 Misc.2d 788, 408 N.Y.S.2d 600 (Sup.Ct.1978), and *Heaney v. Government of Spain*, 445 F.2d 501 (2d Cir.1971), an inquiry was made into the purpose of the conduct at issue rather than its nature. This approach has been overruled. *See Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 310 n. 27 (2d Cir.1981) *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *McDonnell Douglas Corp. v. Islamic Rep.*

*of Iran*, 758 F.2d 341, 349 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985).

The Commercial Office offers three other cases which require somewhat closer analysis. They are *Broadbent v. Organization of American States*, 628 F.2d 27 (D.C.Cir. 1980); *Tuck v. Pan American Health Organization*, 668 F.2d 547 (D.C.Cir.1981); and *Chiriboga v. International Bank for Reconstruction and Development*, 616 F.Supp. 963 (D.C. D.C. 1985). Each of the latter cases relies on *Broadbent*. In *Broadbent*, the court quoted the House Report concerning § 1603(d) of the FSIA as follows:

> Also public or governmental and not commercial in nature would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the foreign state in the United States.

628 F.2d at 34 (quoting H. Rep. No. 94–1487, 94th Cong., 2d Sess. 16 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604, 6615). *Broadbent* went on to hold that, based on this House Report, the relationship of an international organization (and, presumably, a foreign state) with its administrative staff was noncommercial under the FSIA. *Id.* at 35.

Contrasting *Broadbent* and its progeny is *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981). The court in *Texas Trading* quotes another portion of the legislative history of the FSIA, namely a statement by Bruno Ristau, then Chief of the Foreign Litigation Section of the Civil Division, Department of Justice:

> [I]f a government enters into a contract to purchase goods and services, that is considered a commercial activity. It bargains and negotiates. It accepts an offer. It enters into a written contract and the contract is to be performed.

**1.** The Commercial Office also cites the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 78, T.I.A.S. No. 6820, and the Vienna Convention on Diplomatic Relations, April 18, 1961, T.I.A.S. No. 7502, 23 U.S.T. 3229, to make a related argument. This argument also fails, however, for the reason given in the text.

*Id.* at 309 (quoting Hearings on H.R. 11315 Before the Subcommittee on Administrative Law and Governmental Relations of the House Committee on the Judiciary, 94th Cong., 2d Sess. 28 (1976)). Four years later, *Texas Trading* was followed in a case involving a contract for the sale of services. *See Practical Concepts, Inc. v. Republic of Bolivia,* 613 F.Supp. 863, 869 (D.C. D.C.1985). The *Practical Concepts* court reasoned that although contracts for the sale of services might seem to be commercial *per se,* only a thorough analysis of the contractual terms could determine whether the activity at issue was really governmental or nongovernmental. *Id. See also,* Note, *Establishing Jurisdiction Under the Commercial Activities Exception to the Foreign Sovereign Immunities Act,* 19 Hous.L.Rev. 1003, 1013 (1982). The court felt that a better approach was to ask whether the terms of the contract were ones which only a sovereign could uphold, or ones which any private party could uphold. Using this test, the court ruled that a consulting services contract which contained unusual terms (such as tax exemptions, diplomatic privileges, and preferential bureaucratic treatment) was noncommercial under the FSIA. *Id.* at 870.

■ In the instant case, we must examine whether Mr. Segni is more like a civil servant, as in *Broadbent,* or more like a consultant, as in *Practical Concepts.* His contract was for a three year term. It required him to exercise "the maximum zeal, diligence, loyalty and professional secrecy that would be necessary for the good and success of this occupation." (Contract of Labor, second paragraph). There are no terms to which only a sovereign could agree. *Compare Practical Concepts, supra,* at 869–70 (terms included relief from taxes and import duties, commitments to provide all travel documents, and guaranteed access to U.S. Embassy commissary and health facilities).

In addition, the Commercial Office has not demonstrated that Mr. Segni is a civil servant. Both parties agree that the Commercial Office bears the burden of proof in this regard. *See* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S. Code Cong. and Admin.News 6604, 6616. It also appears that Mr. Segni is an Argentine national, and thus is exempted from the rule set out in H.Rep. No. 94–1487, 1976 U.S.Code Cong. and Admin.News 6604. *See State Bank of India v. National Labor Relations Board,* 808 F.2d 526, 535 (7th Cir.1986).

■ The parties do not appear to contest the subject matter jurisdiction of this court on any other ground, such as whether the commercial activity at issue had the requisite jurisdictional nexus with the United States. *See De Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385, 1391 (5th Cir.1985). Nonetheless, this court finds that that prerequisite is easily met, since the contract at issue was entered into and performed in this country. *See* 28 U.S.C. § 1605(a)(2).

For all of the above reasons, this court finds that the Commercial Office's activities with respect to Mr. Segni's contract were commercial in nature. Its motion to dismiss for lack of subject matter jurisdiction is therefore denied.

IT IS SO ORDERED.