**Carr L. DONALD, Plaintiff,**

v.

**Alejandro ORFILA, Defendant.**

**Civ. A. No. 84–3331.**

United States District Court,
District of Columbia.

July 30, 1985.

Francis X. McLaughlin, Kensington, Md., for plaintiff.

William M. Berenson, Diana S. LaVertu, Organization of American States, William D. Rogers, Darrell J. Hieber, Arnold & Porter, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This case now is before the Court on the motion of the defendant to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b). The Court holds that dismissal is warranted because the defendant, the former Secretary General of the Organization of American States (OAS) is absolutely immune from liability for actions resulting in the termination of the plaintiff's employment at the OAS.

The defendant's claim of immunity is based on three sources: The International Organizations Immunities Act of 1945 (IOIA), 22 U.S.C. § 288d(b); the OAS Charter, Feb. 27, 1967, 2 U.S.T. 2394, T.I.A.S. No. 2361, *as amended*, 21 U.S.T. 607, T.I.A.S. No. 6849; and general principles of international law. The Court need look only to the first to dispose of this case.

The IOIA confers immunity if the following requirements derived from § 288d(b) are met:

1. The OAS must be a public international organization with participation by the United States as a member under treaty or an Act of Congress, and recognized by Executive Order of the President as eligible to receive the privileges and immunities granted by § 288.

2. The defendant must have been accepted as and notified by the Department of State regarding his appointment as Secretary General of the OAS.

3. The OAS must not have waived immunity under § 288d(b).

4. The acts complained of must have been performed by the defendant in his official capacity and must have fallen within his functions as Secretary General of the OAS.

Apparently, the plaintiff has conceded that the defendant has met the first three requirements because he bases his argument against immunity solely on the defendant's alleged failure to meet the last.

██ The plaintiff argues that the last requirement cannot be met because the defendant, in terminating the plaintiff's employment, acted in bad faith to cover up his own improprieties in office.[1] Such allegedly evil personal motives, it is contended, would remove the defendant's actions from the ambit of functional duties performed in his official capacity to nonfunctional duties beyond the scope of his authority. The plaintiff argues further that even if the immunity applies, it is qualified rather than absolute in nature.

██ The plaintiff's arguments confuse and erode the distinction between absolute and qualified immunity. By allowing motivation to be initially determinative of the application of either type of immunity, the Court would emasculate the essence of absolute immunity for if immunity is absolute, the suit is defeated at the outset with no inquiry as to motivation. Only with regard to qualified immunity does the inquiry proceed to the motivation and circumstances of the actions in question. *See Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976).[2] Motivation, the primary determinative factor of qualified immunity, cannot convert official actions within the scope of absolute immunity into those beyond the scope of immunity. Therefore, the Court rejects motivation as the initial inquiry and instead focuses on the nature of the immunity conferred by the IOIA.

██ The plaintiff bases his contention that the immunity is qualified on the language of the IOIA, *i.e.,* that certain requirements as specified here previously must be met. The qualifying language of the statute is, however, neither conclusive of nor synonymous with the nature of the resulting immunity. Rather, the statute limits merely the application or, in other words, the scope of the immunity.

There are no precedents directly on point but inferences can be drawn from cases with similar questions. In discussing § 288d(b), the District Court for the Southern District of New York stated: "The foregoing provision adopted a functional criterion for determining the scope of immunity." *United States v. Melekh,* 190 F.Supp. 67, 79 (S.D.N.Y.1960). In *Melekh,* the defendant's actions did not grow out of his official actions, but the Court said if the actions had been ancillary to his United Nations functions, the defendant would have received "complete immunity" under the IOIA. *Id.* at 79–80.

The Court of Appeals for the District of Columbia Circuit stated with regard to the immunity of an organization under the Foreign Services Act:

> The United States has accepted without qualification the principles that international organizations must be free to perform their functions and that no member state may take action to hinder the organization. * * * International officials should be as free as possible, within the mandate granted by the member states, to perform their duties free from peculiarities of national politics. * * * It would seem singularly inappropriate for the international organization to bind itself to the employment law of any particular member, and we have no reason to think that either the President or Con-

---

**1.** In support of his opposition, plaintiff states that the Court must accept as true his allegations that the defendant acted in bad faith and beyond the scope of his authority by maliciously interfering with the plaintiff's employment rights and intentionally causing the plaintiff to suffer mental and emotional distress. These are legal conclusions, however, and it is only the well-pleaded material facts which are to be taken as admitted. *Shear v. Nat'l Rifle Ass'n,* 606 F.2d 1251, 1253 (D.C.Cir.1979); *Mitchell v. Ar-*

*chibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978).

**2.** While the Supreme Court dealt with prosecutorial immunity in *Imbler* and the footnote cited was derived from cases dealing with state officials, the distinction between absolute and qualified immunity also applies to governmental immunity as here.

gress intended this result. An attempt by the courts of one nation to adjudicate the personnel claims of international civil servants would entangle those courts in the internal administration of those organizations.

*Broadbent v. Organization of American States,* 628 F.2d 27, 34–35 (D.C.Cir.1980). This discussion of the policy behind the rules of immunity is significant here. Furthermore, the Court, in *Broadbent,* explained by citing legislative history that the immunity granted by the IOIA was the same absolute immunity from suit enjoyed by foreign governments at the time of the IOIA's enactment. *Id.* at 30.

Other legislative history reveals that the absolute immunity granted to the international organization was intended to extend to officers and employees. "In general, as stated at the beginning of this report, the privileges and immunities provided in this legislation are similar to those granted by the United States to foreign governments and their officials." H.R.Rep. No. 1203, 79th Cong., 1st Sess. 2, *reprinted in* U.S. Code Cong. & Ad.News 950. Thus, Congress intended that the nature of § 288d(b) immunity be absolute although its scope was limited by a functional criterion.

For the reasons given, including the implications of court decisions, the purpose behind a grant of absolute immunity and legislative history, the Court finds that where the acts of the defendant were performed in his official capacity and fell within his functions as Secretary General of the OAS, the defendant is absolutely immune from suit.

The final inquiry, then, is whether the defendant's acts satisfy the functional criterion for absolute immunity. In his opposition to the motion to dismiss, the plaintiff admits that the OAS authorizes the Secretary General to hire and fire personnel according to the OAS Charter and its General Standards. By so admitting, the plaintiff has agreed that personnel management was among the functional duties of the defendant as Secretary General.

Therefore, since the motives behind the defendant's actions in abolishing the plain-

tiff's position do not convert such acts into acts which are outside the scope of the authority of the Secretary General and since the plaintiff concedes that the Secretary General is authorized to hire and fire personnel as part of his functional duties and since the defendant has met all other requirements necessary for the application of immunity under 22 U.S.C. § 288d(b), the defendant is absolutely immune from suit in this case.

In accordance with the foregoing and upon consideration of the defendant's motion, the opposition thereto, and the reply, it hereby is

ORDERED, that the complaint is dismissed. It hereby further is

ORDERED, that the defendant's request for the sanction of attorney's fees is denied as unwarranted in the circumstances in that relevant prior authorities are not as clear and controlling as the defendant contends.

SO ORDERED.